UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

RYAN G. McAFEE,

    Plaintiff,

    v.

METROPOLITAN LIFE INSURANCE COMPANY and PEOPLESOFT INCORPORATED LONG-TERM DISABILITY PLAN,

    Defendants.

NO. CIV. S-05-0227 WBS KJM

MEMORANDUM AND ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT

----oo0oo----

Plaintiff Ryan McAfee and defendants PeopleSoft, Inc. and Metropolitan Life Insurance Company ("MetLife") dispute whether plaintiff's performance-based stock options should be considered "predisability earnings," and therefore should be part of the basis for the calculation of plaintiff's monthly disability benefits. Both parties now move for summary judgment on that issue pursuant to Federal Rule of Civil Procedure 56. For the reasons below, the court grants plaintiff's motion and denies defendants' motion.

///

1

I.   Factual and Procedural Background

Plaintiff was employed by PeopleSoft, Inc. as Vice President of Research. (Pl.'s Mot. for Summ. J. 2.) In a letter formalizing an offer of employment from PeopleSoft, he was informed that he would be eligible to participate in their Employee Incentive Compensation Program, that he would be eligible for the Employee Stock Purchase Plan, and that he would be covered for various benefits, including disability insurance. (Defs.' Mot. for Summ. J. Ex. D at 00132 (Dec. 3, 1993 Hire Letter).) Under the Executive Incentive Compensation Program, "[b]onus amounts are based on PeopleSoft profits and individual performance." (Id.) The disability insurance plan is funded by a group policy issued by MetLife to PeopleSoft and is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.

PeopleSoft's Online Benefits Handbook explains various benefits available to employees, including health, dental, life, and disability insurance, a 401 K plan, and an Employee Stock Purchase Plan. (AR 00143-00176.) According to PeopleSoft's Online Benefits Handbook, the most popular benefit program offered by PeopleSoft was the Employee Stock Purchase Plan. (AR 00305.) Under that plan, employees are allowed to "contribute from one to ten percent of [their] total compensation--including base salary, performance bonuses, commission, overtime pay, and/or other compensation--toward the purchase of the company's common stock at a discounted price." (Id.) This plan is open to all employees who had been continuously employed at PeopleSoft one month prior to purchase of stock options and who worked at

2

least 20 hours a week for 5 months a year. (AR 00306.) There is no mention of any performance requirements or favorable evaluations that are required in order to participate in the program. (Id.) The Employee Incentive Compensation Program is not mentioned in the Online Benefits Handbook. (AR 00143-00319.)

The disability insurance plan includes the following language: "MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract. This includes the Group Policy, Certificate and any Amendments." (Sullivan Decl. Ex. A (Employee Benefit Plan) at 62.) Plaintiff opted into the Enhanced Plan, which provided that he should receive monthly benefits in the amount of 60% of the first $41,667 of his predisability earnings, or a maximum of $25,000 per month. (Id. at 70.) Predisability earnings are defined to mean "the amount of [an employee's] gross salary or wages from [his or her] Employer as of the day before [his or her] Disability began." (Id. at 86-87.) Examples given of predisability earnings include (1) commissions and/or performance bonuses, (2) contributions to Internal Revenue Code §§ 401(k), 403(b) or 457 plans through a salary reduction agreement, and (3) amounts contributed to fringe benefits according to a salary reduction agreement. (Id.) Predisability earnings expressly do not include awards, overtime pay, employer contributions to deferred compensation arrangements or pension plans, or any other compensation. (Id.)

In 1999, when plaintiff was injured and became a paraplegic, he was entitled to stock option performance bonuses in addition to his base salary of approximately $175,315.44 per

3

year.[1] (Pl.'s Mot. Summ. J. 3.) The performance bonuses were paid to plaintiff as part of the Employee Incentive Compensation Program. (Id. at 4.) Plaintiff received approximately 20,000 stock options each year, in his position as a vice president at PeopleSoft. (AR 0057 (Plaintiff's Appeal Latter at 3).) Plaintiff explains that he was familiar with and partially responsible for the stock option performance bonuses given to employees under his supervision. (AR 0058.) The amount of stock options given to an employee was determined with reference to the employee's annual performance rating combined with the employee's level or position. (Id.)

On September 3, 2004, plaintiff received a letter from MetLife acknowledging his medically-supported disability but communicating their decision to deny him long-term disability

---

[1] Plaintiff presents evidence in the form of a letter explaining his personal knowledge about the nature and amount of the stock options he received. Defendants contend that the court cannot rely on such evidence. However, the summary judgment standard permits the court to rely on information within a person's personal knowledge and allows the court to consider facts that would be admissible into evidence at trial in some form, even if they are not presented in that form for the purposes of the motion. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses."); Fraser v. Goodale, 342 F.3d 1032, 1037 (9th Cir. 2003) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." (citing Block v. City of L.A., 253 F.3d 410, 418-19 (9th Cir. 2001))); Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 206 F.3d 1322, 1330 (9th Cir. 2000) (explaining that with respect to affidavits in support of a motion for summary judgment, "[p]ersonal knowledge can be inferred from an affiant's position" (citing Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Ind., Inc., 84 F.3d 1186, 1193 (9th Cir. 1996)); Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990)).

benefits based on a lack of evidence of a severe condition rendering him disabled. (Sullivan Decl. Ex. B at 0055.)  On October 26, 2004, plaintiff appealed both this denial of his long-term disability benefits and the decision not to consider stock options "earnings" for the purpose of calculating the amount of benefits. (Id.)  A primary reason MetLife cited for denial of benefits was that plaintiff had worked full-time post-injury. (Id. at 0056.)  However, plaintiff explained in his appeal that he did not perform work as he had before the injury, but rather began working, sometimes from home, as a special accommodation by PeopleSoft under a doctor's orders to prevent him from falling into a life-threatening depression. (Id. at 0057.)

        Also included in the administrative record is a report from an independent physician consultant who conducted a review of plaintiff's claim for defendants. (AR 707 (Physician Consultant Review).)[2]  This consultant relied upon the fact that plaintiff's earned $389,000 in the form of "performance bonuses" each year even subsequent to his disability to argue that there were no concerns about plaintiff's performance after he became disabled.  The physician consultant came to the conclusion that plaintiff should be able to perform work if he was motivated to do so, particularly because "[h]e had a significant accomodation to his job that did not appear to impact his wage earning ability by his report." (Id. at 709.)

---

[2] It appears that this physician relied upon the appeal letter that plaintiff sent to MetLife in making this determination. (Id.)

5

1      MetLife subsequently reinstated plaintiff's disability
2 benefits, but the amount of disability benefits reflected only
3 his base income level, and not his stock option performance
4 bonuses.  (Id. at 0021 (Email from Diane L. Reiss to Employer
5 PeopleSoft for Salary Information).)  By way of investigation
6 into the nature of plaintiff's stock options, MetLife had sent an
7 email communication to PeopleSoft to determine whether stock
8 option performance bonuses should be considered as part of his
9 salary.  (Id.)  Darren L. Cartright, PeopleSoft's Workers'
10 Compensation, Disability, and Leave Manager, responded that
11 plaintiff's "earnings (base salary, bonus, & commissions) from
12 5/1/01-4/30/02 (52 weeks) were $175,315.61.  Stock options are
13 not counted as income in the STD/LTD [short-term disability/long-
14 term disability] calculation, regardless of what they may have
15 been designated for in the past."  (Sullivan Decl. Ex. B. at
16 0022.)

17      Additionally, defendants hired an independent physician
18 consultant to conduct a review of plaintiff's claim for them.
19 (AR 707 (Physician Consultant Report).)  This consultant relied
20 upon the fact that plaintiff's earned $389,000 in the form of
21 "performance bonuses" each year even subsequent to his
22 disability, which indicated that there were no concerns about his
23 performance after he became disabled.  (Id.)  It appears that
24 this physician relied upon the letter that plaintiff sent to
25 MetLife in making this determination.  (Id.)  The physician
26 consultant came to the conclusion that plaintiff should be able
27 to perform work if he was motivated to do so, particularly
28 because "[h]e had a significant accommodation to his job that did

1  not appear to impact his wage earning ability by his report."
2  (Id. at 709.)
3           Plaintiff brought suit under 29 U.S.C. § 1132(a)(1)(B),
4  the provision of ERISA providing for civil actions to recover
5  disability benefits under an ERISA plan, alleging that he has
6  been and is continuing to be denied $16,234.23 a month in
7  disability benefits because of MetLife's determination that his
8  stock option performance bonuses do not qualify as predisability
9  income.
10 II.   Discussion
11          The party moving for summary judgment bears the initial
12 burden of establishing the absence of a genuine issue of material
13 fact and can satisfy this burden by presenting evidence that
14 negates an essential element of the non-moving party's case.
15 Celotex, 477 U.S. at 322-23.  However, "[w]here the decision to
16 grant or deny benefits is reviewed for abuse of discretion, a
17 motion for summary judgment is merely a conduit to bring the
18 legal question before the district court and the usual tests of
19 summary judgment, such as whether a genuine dispute of material
20 facts exists, do not apply." Bendixen v. Standard Ins. Co., 185
21 F.3d 939, 942 (9th Cir. 1999).
22          A.   Standard of Review
23          The standard of review of a decision regarding benefits
24 under an ERISA plan depends upon the discretion the plan grants
25 to the administrator or fiduciary to construe the terms of the
26 plan. Jordan v. Northrop Grummman Corp. Welfare Benefit Plan, 63
27 F. Supp. 2d 1145, 1154 (C.D. Cal. 1999) (citing Firestone Tire &
28 Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  Ordinarily, the

7

court conducts a de novo review of the record; however, if the ERISA plan vests an administrator with discretion, the standard of review of the grant or denial of benefits is abuse of discretion.[3]  Bendixen, 185 F.3d at 942.  "[A]n administrator ha[s] discretion only where discretion [is] 'unambiguously retained' by the administrator."  Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999) (en banc) (citing Bogue v. Ampex Corp., 976 F.2d 1319, 1325 (9th Cir. 1992)).  "Under the abuse of discretion standard, the court's review is limited to the administrative record, and the decision of an administrator will not be disturbed unless the court determines that the decision was arbitrary or capricious."  Horn v. Provident Life & Accident Ins. Co., 351 F. Supp. 2d 954, 958 (N.D. Cal. 2004) (citations omitted).  Arbitrary and capricious decisions are decisions that are unreasonable.  Id.

      The plan at issue here contains the following language, "MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract.  This includes the Group Policy, Certificate and any Amendments."  By this language MetLife has unambiguously retained discretion over its interpretation of plan terms.  Thus, an abuse of discretion

---

[3] The terms "arbitrary and capricious" are synonymous with "abuse of discretion" in the Ninth Circuit.  Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 n.2 (9th Cir. 1993) (explaining that the Ninth Circuit's use of "arbitrary and capricious" rather than "abuse of discretion" amounts to "a distinction without a difference").

8

standard is applicable.[4]

### B. Application of Standard of Review

Plaintiff's disability benefits were calculated based upon his predisability earnings, and the plan gives examples of different types of predisability earnings. "Performance bonuses" are one such example of a type of earnings or wages given in the plan. In denying plaintiff's claim, defendants concluded that the term "performance bonuses" does not include plaintiff's stock options.[5]

---

[4] Defendants argue that plaintiff failed to exhaust his administrative remedies by filing only one appeal after their denial of his claim for benefits based upon stock options, and therefore that plaintiff prematurely filed this case in federal court. (Defs.' Opp'n to Pl.'s Mot. Summ. J. 9-10.) However, plaintiff explicitly appealed both the general denial of disability benefits and the specific denial of benefits based upon stock options, and defendants responded by allowing general benefits based on plaintiff's income and disallowing benefits based on stock options. (Pl.'s Excerpts of R. 55 (appeal letter); Defs.' Mot. for Summ. J. Ex. D at 0021 (Email from Diane L. Reiss to Employer PeopleSoft for Salary Information).) Moreover, nowhere do defendants cite an internal grievance procedure that would have required plaintiff to file more than one internal appeal before being able to file in federal court. Defendants' argument additionally suggests no limit to the number of appeals that could be required before internal grievance procedures are exhausted.

Finally, if defendants contend that there were additional, voluntary levels of appeal of which plaintiff could have availed himself, plaintiff's failure to elect further appeals cannot be considered a failure to exhaust his administrative remedies under the regulations governing administration and enforcement of ERISA plans. See 29 C.F.R. §§ 2560.503-1(d), (c)(3) ("The plan waives any right to assert that a claimant has failed to exhaust administrative remedies because the claimant did not elect to submit a benefit dispute to any such voluntary level of appeal provided by the plan."). The court therefore declines to hold plaintiff to an exhaustion requirement encompassing voluntary appeals, much less an exhaustion requirement that could extend indefinitely.

[5] Defendants contend that their determination was reasonable because they sent an email to PeopleSoft's Workers' Compensation, Disability, and Leave Manager, asking for

Stock options were available to PeopleSoft's employees through the Employee Stock Purchase Plan, which is open to all employees on the condition that they spend a certain amount of time with the company and irrespective of their individual performance.  Thus, it is unlikely that these stock options could be considered "performance bonuses."[6]  The particular stock options at issue in this case, on the other hand, were given to plaintiff through the Executive Incentive Compensation Plan. Unlike the stock options employees could purchase through the Employee Stock Purchase Plan, the stock options issued through the Executive Incentive Compensation Plan were not discussed in the PeopleSoft Online Benefits Handbook.  The PeopleSoft Online Benefits handbook mentions various types of benefits available to

---

verification of plaintiff's salary.  However, the precise terms of the policy at issue that defendants needed to construe in order to make a benefits decision were "predisability earnings" and "performance bonuses," and not the term "salary."  Moreover, it is unclear what relation PeopleSoft's definition of "salary" should have to the interpretation of MetLife's insurance plan. Even assuming PeopleSoft's interpretation of the term "salary" was relevant, the response defendants received to this email implied that stock options may have been considered "salary" by PeopleSoft at some point.  Defendants did not seek to clarify whether stock options were considered salary at any time during plaintiff's employment, or why stock options were but are not now considered "salary."  Therefore, this email is of minimal value with regard to the construction of the term "performance bonuses" and a determination that stock options do not fall under the definition of that term, and it does not render defendants' decision to deny benefits reasonable.

[6]  Defendants appear to argue that the stock options at issue here could have been purchased by plaintiff through the Employee Stock Purchase Plan.  However, they have presented no evidence to demonstrate that this is the case, and plaintiff's appeal letter is evidence in the record that supports a finding that his stock options were awarded through the Executive Incentive Compensation Program.  Moreover, defendant's independent physician consultant relied upon his stock options to deny him disability because they proved that his <u>performance</u> was unaffected.

10

most employees at PeopleSoft, including health insurance and an Employee Stock Purchase Plan.  It is thus clear that the Executive Incentive Compensation Plan was not a firm-wide benefit that was available to all employees.

Additionally, the very name of the plan contains the term "compensation."  Plaintiff's hire letter also explains the nature of these stock options.  The letter indicates that bonuses were offered through the Executive Incentive Compensation Plan and that the "[b]onus amounts are based on PeopleSoft profits and individual performance."  Plainly and unambiguously, this letter describes "performance bonuses," and plaintiff's stock options therefore fall under the definition of predisability earnings that should be used in a calculation of his disability benefits.

Defendants argue that their interpretation of plan language was reasonable because stock options are not wages, primarily because they are fluid in nature and their value may change greatly over time.[7]  Notwithstanding the difficulty in valuing stock options, courts have interpreted stock options to be earnings.  See, e.g., S.E.C. v. Gemstar-TV Guide Int'l, Inc., 401 F.3d 1031, 1040 (9th Cir. 2005) (noting that the employee could receive either cash or stock options as a "merit bonus"); Scully v. US WATS, Inc., 238 F.3d 497, 508 (3d Cir. 2001) (noting

---

[7] Defendant cites IBM v. Bajorek, 191 F.3d 1033, 1040 (9th Cir. 1999), in which the court explained that stock options were not "fixed, ascertainable sums" because they were dependent upon "the vagaries of stock market valuations," and therefore, they did not fall under the definition of wages provided in California Labor Code § 221.  The statutory interpretation the Bajorek court was engaged in is not the relevant inquiry for the court here, as neither party has argued that § 221 is in any way applicable to this case.

11

1 that "[s]tock options are an increasingly common form of executive
2 compensation [that] are often conferred in the place of more
3 traditional forms of compensation like salary[,] and also that
4 "valuing employee stock options is a complicated enterprise, made
5 more so because, unlike other stock options, employee stock
6 options are not publicly traded"); <u>Greene v. Safeway Stores,
7 Inc.</u>, 210 F.3d 1237, 1243 (10th Cir. 2000) ("The value of an
8 option is inherently fluid because it equals the difference in
9 the exercise price and the market price . . . . Stock options
10 are an increasingly common form of executive compensation.
11 Options are often conferred in the place of more traditional
12 forms of compensation like salary and require the executive to
13 assume considerable risk. Stock options are sometimes referred
14 to as 'contingent compensation.'" (citations omitted)); <u>In re
15 Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1424 (3d Cir.
16 1997) ("A large number of today's corporate executives are
17 <u>compensated</u> in terms of stocks and stock options" (emphasis
18 added).). Thus, the fact that plaintiff's stock options may be
19 difficult to value or may have different values at different
20 times has no bearing on the fact that they fall under the plan's
21 definition of wages.

22        Therefore, the court concludes that the plan language
23 "performance bonuses" clearly encompasses the incentive stock
24 options at issue here, that such stock options are predisability
25 earnings, and that defendants' interpretation to the contrary was
26 unreasonable. See <u>Clark v. Wash. Teamsters Welfare Trust</u>, 8 F.3d
27 1429, 1432 (9th Cir. 1993) ("The touchstone of 'arbitrary and

capricious' conduct is unreasonableness.")[8]

///

///

---

[8] Plaintiff additionally contends that collateral estoppel applies to preclude defendants from contesting his suit. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980) (citing Montana v. United States, 440 U.S. 147, 153 (1979)). The Supreme court "has allowed a litigant who was not a party to a federal case to use collateral estoppel 'offensively' in a new federal suit against the party who lost on the decided issue in the first case." Id. (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979)). Still, "collateral estoppel applies only when the issues presented in each matter are identical. The doctrine is inapplicable if the issues are merely similar." Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1399 (9th Cir. 1992).

In Hawkins-Dean v. Metropolitan Life Insurance Co., the Ninth Circuit reversed the district court's determination that MetLife, also a defendant here, did not abuse its discretion in denying the plaintiff disability payments based on her stock options. 161 Fed. Appx. 684, 685 (9th Cir. 2006). MetLife's denial of disability payments in Hawkins-Dean was based upon its finding that stock options were not "wages." Id. The Ninth Circuit held that the plaintiff "[wa]s entitled to monthly benefits based on her total earnings, including earnings from stock options, as reported on her W-2 form." Id. However, the plan that the court interpreted in Hawkins-Dean provided for payment of 60% of "Basic Monthly Earnings" as disability benefits, which were defined as the greater of the following two items: (1) employee earnings, including overtime and bonuses, as reported on the employee's W-2 form by the employer; and (2) employee base monthly salary. (Pl.'s App. in Opp'n, Ex. 2 at 3.) The plaintiff in Hawkins-Dean additionally had stock options that were reported on her W-2 form. 161 Fed. Appx. at 685.

Thus, the issue MetLife litigated in Hawkins-Dean (see Pl.'s Opp'n to Defs.' Mot. Summ. J. App. 1-4 (Opinion, Appellant's Brief, Appellee's Brief, Appellant's Reply Brief), is not identical to the issue presented here. The two plans contain different language and different definitions of plan language. Moreover, the salient fact in Hawkins-Dean, the fact that plaintiff's stock options were reported on her W-2 forms, has not been established here. Therefore, the issue in this case and the issue resolved by the Ninth Circuit in Hawkins-Dean are not identical, and MetLife is not collaterally estopped from relitigating the question of whether stock options count as wages for the purpose of determining disability benefits.

13

1         IT IS THEREFORE ORDERED that plaintiff's motion for
2 summary judgment on the issue of whether his performance-based
3 stock options constituted earnings within the meaning of the
4 policy be, and the same hereby is, GRANTED.
5         IT IS FURTHER ORDERED that defendants' motion for
6 summary judgment be, and the same hereby is, DENIED.
7         The amount which plaintiff is entitled to recover
8 remains to be determined.
9 DATED:  May 23, 2006

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE